# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MARIETTA INDUSTRIAL ENTERPRISES, INC.,**

    **Plaintiff,**

    v.

**CENTER POINT TERMINAL, et al.,**

    **Defendants.**

Civil Action 2:18-cv-12
Magistrate Judge Jolson

## OPINION AND ORDER

This matter, in which the parties have consented to jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 17), is before the Court on a Motion to Dismiss filed by Defendant Eric J. Spiritas pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). For the reasons that follow, Mr. Spirtas's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

On December 4, 2017, Plaintiff Marietta Industrial Enterprises, Inc. filed a Complaint against Defendants Center Port Terminal ("CPT"), Eric J. Spirtas, McKees Rocks Industrial Enterprise ("McKees Rocks"), and James Lind in the Court of Common Pleas for Washington County, Ohio. (Doc. 1-3). On January 5, 2018, CPT and Mr. Spirtas removed the action to this Court pursuant to its diversity jurisdiction. (Doc. 2). On the same day, McKees Rocks and Mr. Lind filed a Notice of Consent to Removal. (Doc. 4).

The Complaint, filed in this Court on January 5, 2018, states that Plaintiff and CPT entered into a contract titled the "Product Handling Agreement" ("PHA"), under which Plaintiff was to provide CPT with certain services at its facility in Hannibal, Ohio, including

"transloading, storage, screening, drying, milling, terminaling, packaging, and transportation. (Doc. 5 at 3; *see id.*, Ex. 1 (signed agreement)). Like any legal fiction operating in the real world, CPT could only act through an actual person. Here, Plaintiff alleges that person was Mr. Spirtas.

Mr. Spirtas is CPT's President (Doc. 13 at 1) as well as the owner and shareholder of CPT's parent company, Hannibal Development (Doc. 12 at 4). Plaintiff asserts that all discussions concerning the PHA "went through Mr. Spirtas, who … had personal responsibility for all matters" between the parties under the contract. (Doc. 5 at ¶ 37). Plaintiff also claims that Mr. Spirtas made personal guarantees concerning the PHA; specifically, that Plaintiff "would make a daily profit" under the agreement, which "would extend indefinitely as long as [Plaintiff] was able to provide the services…." (*Id.* at ¶¶ 35–36).

In Count I of the Complaint, Plaintiff alleges that CPT and Mr. Spirtas are liable for breach of contract. (*Id.* at ¶¶ 29–39). More specifically, Plaintiff alleges that CPT and Mr. Spirtas cancelled the PHA prematurely without notice, despite Plaintiff performing its obligations under the PHA. (*Id.* at ¶¶ 30, 34). Plaintiff also claims that CPT and Mr. Spirtas refused to pay monthly service fees remaining under the contract, which was effective until December 31, 2018. (*Id.* at ¶¶ 33–34). Last, Plaintiff explains that it purchased a crane with "knowledge and approval" of CPT and Mr. Spiritas for the purpose of fulfilling its PHA obligations, and it still has payments to make on the crane that were to have been covered by the rental payment due under the PHA. (*Id.* at ¶ 32).

Based on the foregoing, Plaintiff alleges that CPT and Mr. Spirtas are jointly and severally liable for $136,219.45 in unpaid invoices and "other unidentified damages as a result of

[the] breach of the PHA's default term." (*Id*. at ¶¶ 38, 39). Plaintiff also seeks attorneys' fees, pre-judgment and post-judgment interest, and costs. (*Id*. at ¶ 39).

On January 18, 2018, Mr. Spirtas filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). Plaintiff filed an Opposition (Doc. 12), and Mr. Spirtas filed a Reply (Doc. 13). Thus, the Motion to Dismiss is now ripe for review.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than [Plaintiffs'] unadorned, the-defendant-unlawfully-harmed-me allegation." *Iqbal*, 556 U.S. at 677–78, *quoting Twombly*, 550 U.S. at 555 (citing to *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

Mr. Spirtas's Motion to Dismiss is straightforward. He asserts that he cannot be held liable for a breach of the PHA because he is not a party to that contract. (*See* Doc. 11). In response, Plaintiff shifts away from its allegations that Mr. Spirtas cancelled the PHA prematurely without notice, refused to pay monthly service fees, and approved its purchase of a crane to fulfill its obligations under the contract. Instead, Plaintiff now explains that its claim is not derived from the PHA itself but from the personal guarantee Mr. Spirtas made to induce it to sign the agreement. (Doc. 12 at 1). Plaintiff argues that Mr. Spirtas's personal guarantee concerning the PHA "is a valid contract, even if created orally." (*Id*. at 3).

Plaintiff elaborates that Mr. Spirtas's personal guarantee falls under the "leading object rule" described by the Ohio Supreme Court in *Wilson Floors Co. v. Sciota Park, Ltd.*, 54 Ohio St.2d 451 (1978). Plaintiff explains:

> In Ohio, personal guarantees are contracts, whether made orally or in writing. The general rule is that contracts in which an individual undertakes to answer for the debt, default, or miscarriage of another must be in writing and signed by the individual promisor. *Wilson Floors Co. v. Sciota Park, Ltd.*, 54 Ohio St.2d 451 (1978) (quoting R.C. § 1335.05). The Ohio Supreme Court went on to note in *Wilson Floors*, that when the "leading object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, or damage to the other contracting party, his promise is not within the statute of frauds [. . . .] *Id*. at 54 Ohio St.2d 451, 454 (quoting *Crawford v. Edison*, 45 Ohio St. 239 (1887)).

(*Id*. at 3–4). Thus, Plaintiff asserts that Mr. Spirtas's personal guarantee is considered enforceable and not within the Statute of Frauds because the principal purpose of his promises were for his own business or pecuniary interests as the owner and shareholder CPT's parent company, Hannibal Development. (*Id*. at 4). Finally, Plaintiff claims that "even if [its] Complaint is insufficient to establish Mr. Spirtas's liability for breach of contract, [it] does not have to prove liability in its Complaint." (*Id*. at 5).

4

In reply, Mr. Spirtas maintains dismissal is proper because the PHA's merger or integration clause reflects that the written document represents the "entire understanding and agreement of the parties." (Doc. 13 at 1) (citing PHA, ¶ 8) (asserting that the "the PHA makes no reference to the need for any additional or varying personal guaranties"). Mr. Spirtas also argues that Plaintiff's Complaint gives no "notice of its new theory that the oral personal guaranties … are not subject to the statute of frauds under the 'leading object rule.'" (*Id*. at 1–2). Stated differently, Mr. Spirtas asserts that "beyond just a general allegation that [he] owns, operates and had personal responsibility over CPT matters, Plaintiff makes no reference to the 'leading object rule' or that the principal purpose for the alleged guaranties … were to benefit his own business or pecuniary interests." (*Id*. at 2). Finally, Mr. Spirtas contends that an oral guarantee that the PHA would extend "indefinitely," is inconsistent with the PHA's shorter term and is subject to the statute of frauds because it could not possibly be performed within one year. (*Id*.).

Despite Plaintiff's attempt to obfuscate the issue in opposing the Motion to Dismiss, this matter requires nothing more than a basic application of contract law. Under Ohio law, when a written contract is "the final and complete statement of the parties' agreement—when, that is, it is a complete integration—the parol evidence rule prohibits the parties from introducing extrinsic evidence of the terms of their agreement." *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 612 (6th Cir. 2001). The Sixth Circuit has explained that the parol evidence rule is a rule of substantive contract law that "does not operate to prohibit proof of terms of the agreement; instead, it provides that parol terms are not terms of the agreement at all." *Id.* at 612 (citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000)). Consequently, if a written contract is

integrated, "it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution." *Id.* at 612 (citations omitted).

Here the PHA is an integrated contract. Specifically, paragraph 8 of the PHA provides:

> Entire Agreement This document represents that *entire understanding* and agreement of the parties and *supersedes all prior agreements or understandings*…. *Neither party has relied upon any other representation* except as set forth herein…. This Agreement shall only be amended or modified by a written document, sign by a duly authorized representative of each party.

(Doc. 5 at 19) (emphasis added). Mr. Spirtas's alleged personal guarantee of "a daily profit under the PHA" relates to profit under the contract, and his alleged promise that that "the PHA would extend indefinitely" relates to the contract term. Because those alleged promises fall within the scope of the contract and were made prior to its execution, Plaintiff's reliance upon them is unreasonable as a matter of law. *Watkins & Son Pet Supplies*, 254 F.3d at 613; *see also Hunt Enters., Inc. v. John Deere Indus. Equip. Co.*, No. 97-6048, 1998 WL 552795 (6th Cir. Aug. 19. 1998) (affirming dismissal of claims under Rule 12(b)(6) based upon merger clause included in agreements). Further, to the extent that Plaintiff may be arguing that Mr. Spirtas made promises after the agreement was signed, the merger clause also renders any reliance on them unreasonable. *See* Ohio Rev. Code § 1302.12(B) (stating that a signed agreement which excludes modification except by a signed writing cannot be otherwise modified).

At bottom, Plaintiff's express agreement in the PHA that it had not relied upon any other representations and that the written document superseded all prior agreements precludes it from relying upon an alleged oral agreement made with Mr. Spirtas. Consequently, Plaintiff's argument that the alleged oral agreement satisfies the "leading object rule," an exception to the writing requirement in the Ohio Statute of Frauds, is irrelevant. Based upon the foregoing, Mr.

Spirtas's Motion is **GRANTED** (Doc. 11), and Plaintiff's claim for breach of contract against Mr. Spirtas is **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, Mr. Spirtas's Motion is **GRANTED** (Doc. 11), and Plaintiff's claim for breach of contract against Mr. Spirtas is **DISMISSED**.

IT IS SO ORDERED.


Date: March 16, 2018                /s/Kimberly A. Jolson
                                    KIMBERLY A. JOLSON
                                    UNITED STATES MAGISTRATE JUDGE